# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

SOLEIMAN MOBARAK,

        Petitioner,       :      Case No. 2:24-cv-143

  - vs -                            District Judge Michael H. Watson
                                      Magistrate Judge Michael R. Merz

JAY FORSHEY, WARDEN,
 Noble Correctional Institution,

                                        :

        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action pursuant to 28 U.S.C. § 2254 in which Petitioner seeks relief from his conviction in the Franklin County Court of Common Pleas (Case No. 12CR-5582) for engaging in a pattern of corrupt activity, aggravated trafficking in drugs, and aggravated possession of drugs and from his consequent sentence of thirty-five years imprisonment.

**Status of Representation**

Petition filed this action *pro se* on January 5, 2024[1].  After the State had filed its Return of Writ (ECF No. 5) and the Court had notified Petitioner of his reply/traverse deadline (ECF No. 6),

---

[1] This is the date on which Petitioner claims he deposited the Petition in the prison mailing system (Petition, ECF No. 1, PageID 15).  Although the Petition was not received and docketed until January 12, 2024, Mobarak is entitled to the earlier filing date under the prison mailbox rule. *Houston v. Lack*, 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Respondent concedes the earlier date (Return, ECF No. 5, PageID 2309).  The difference is not material to the statute of limitations analysis offered below.

1

Petitioner filed a *pro se* request for extension of that date (ECF No. 7) which was granted in full to April 22, 2024 (ECF No. 8). Eight days later Attorney Philip Pitzer entered his appearance as counsel for Petitioner and included in his Notice of Appearance a request for a further extension of time to file the traverse until May 8, 2024 (ECF No. 9). The undersigned denied the extension without prejudice because Attorney Pitzer had not complied with S. D. Ohio Civ. R. 7.3(a) which provides:

> **Motions for Extension of Time**. Prior to filing any motion for an extension of time, counsel shall consult with all parties (except prisoners appearing pro se) whose interests might be affected by the granting of such relief and solicit their consent to the extension. The motion shall affirmatively state that such consultation has occurred or was attempted in good faith and shall state whether the motion is unopposed. If the extension is not opposed, the movant should submit a proposed order to the Court in the form prescribed by S.D. Ohio Civ. R. 7.4.

The denial was without prejudice to renewal after compliance. Attorney Pitzer never renewed the motion.

The purpose of S. D. Ohio Civ. R. 7.3 is to promote civility in the practice of law and to advise the Court whether it must wait to decide the motion until the time for opposition – twenty-one days under S. D. Ohio Civ. R. 7.2 – has passed. Since motions for extension are often filed shortly or very shortly before a deadline passes, non-compliance with Rule 7.3 presents the Court with a dilemma. Opponents of motions are entitled to be heard before they are decided, but waiting twenty-one days will usually mean the deadline has passed. Having court staff call opposing counsel raises *ex parte* communication concerns. Typically when the Court denies an extension on Rule 7.3 grounds, the non-complying attorney says "oops," calls opposing counsel, obtains agreement, and re-files the request as an unopposed motion. That did not happen here. Instead, Petitioner filed his Traverse *pro se*, claiming the Magistrate Judge would not allow the sought

2

extension[2] (Traverse, ECF No. 11, PageID 2333). The truth of the matter is the Magistrate Judge would have readily granted the extension after compliance with S. D. Ohio Civ. R. 7.3 whether or not opposing counsel agreed. But neither Petitioner nor Attorney Pitzer ever asked.

Going forward the Court will treat the Traverse as properly filed but *pro se* and expect that Petitioner will be proceeding *pro se* through the rest of the case. He is not required to do so; Attorney Pitzer or any other member of the bar of this Court may assume the representation. However, the representation may not be hybrid with both attorney-filed and *pro se* papers.

**Litigation History**

On August 3, 2012, a Franklin County grand jury indicted Petitioner on one count of aggravated trafficking in drugs in violation of Ohio Revised Code § 2925.03 (Count 1) and one count of trafficking in "spice" in violation of Ohio Revised Code § 2925.03 (State Court Record, ECF No. 4, Ex. 1). On October 31, 2012, a Franklin County grand jury indicted him again on one count of engaging in a pattern of corrupt activity in violation of Ohio Revised Code § 2923.31 (Count 1), five counts of aggravated trafficking in drugs in violation of Ohio Revised Code § 2925.03 (Counts 2, 4, 6-7, 9), and four counts of aggravated possession of drugs in violation of Ohio Revised Code § 2925.11 (Counts 3, 5, 8, 10). (*Id.*, Exhibit 3).

The matter proceeded to trial at which time a jury found Petitioner not guilty on Counts 2, 3, and 4 of the renumbered indictment, but guilty on all other counts and he was sentenced to an aggregate thirty-five years in prison. Petitioner appealed to the Ohio Tenth District Court of

---

[2] "Although the Petitioner obtained Counsel to aid him in presenting and arguing his case, the District Court refused to grant the Petitioner's Counsel an extension of time in order to learn the case and prepare. Therefore, the Petition is forced to file his own Traverse . . . . *Id.*

Appeals which sustained Petitioner's First Assignment of Error. *State v. Mobarak*, 2015 WL 4554370 (10th Dist. July 28, 2015)(copy at State Court Record, ECF No. 4, Ex. 19). The Ohio Supreme Court accepted jurisdiction on the State's appeal and reversed. *State v. Mobarak*, 150 Ohio St. 3d 26, 2016-Ohio-8372 (2016)(copy at State Court Record, ECF No. 4, Ex. 25). On remand the Tenth District reinstated Petitioner's remaining assignments of error and overruled them, affirming the conviction. *State v. Mobarak*, 98 N.E.3d 1023, 2017-Ohio-7999 (10th Dist. Sept. 29, 2017)(copy at State Court Record, ECF No. 4, Ex. 27). Mobarak did not seek review in the Ohio Supreme Court.

On December 19, 2014, Mobarak filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 4, Ex. 28). The Common Pleas Court denied both the original and an amended petition. *Id.* at Ex. 35. The Tenth District affirmed and Petitioner failed to appeal further. *Id.* at Ex. 42.

However, Mobarak did file a petition for writ of mandamus in the Tenth District seeking an order that his conviction be vacated for lack of subject matter jurisdiction in the trial court. *State ex rel Mobarak v. Brown,* 2024-Ohio-221 (Jan. 24, 2024). On appeal the Ohio Supreme Court concluded Mobarak had not shown the Franklin County Common Pleas Court patently lacked jurisdiction of the offenses charged against Mobarak, but also he could not invoke mandamus because the had an available remedy at law.[3]

Mobarak filed his Petition in this case on January 5, 2024, pleading the following grounds for relief:

> **Ground One**: The Petitioner is actually innocent of any offense defined in Ohio Revised Code Sections 2925.03, Aggravated Trafficking in Drugs, and 2925.11, Aggravated Possession of Drugs,

---

[3] This mandamus action is not discussed in the Return of Writ, but it is discussed here because Mobarak relies on Justice Donnelly's dissent. No other justice joined that dissent and the mandamus action is not relevant to the statute of limitations question discussed *infra*.

4

name either Spice" or " Bath Salts", and he is in State custody in violation of the Constitution or laws or treaties of the United States, whereas his conviction, sentence, and imprisonment, are unconstitutional and violate substantive and procedural Due Process of Law, Equal Protection of Law, and other Rights under the United States Constitution, and/or Federal Law, as determined by the United States Supreme Court, where neither these statutes, nor any other Ohio statute, identified either "Spice" or "Bath Salts" as a "controlled substance analog" by either name or definition, until after the date of the "offenses" listed in his indictment; and where the statutes under which the Petitioner was charged failed to provide the Petitioner, or any other average citizen affected by the statutes, of the particular form of notice that "is in itself reasonably certain to inform those affected."

**Ground Two**: Ohio Revised Code Sections 2925.03, Aggravated Trafficking in Drugs, and 2925.11, Aggravated Possession of Drugs, are unconstitutional as applied to the Petitioner, resulting in the Petitioner being in State custody in violation of the Constitution or laws or treaties of the United States, whereas his conviction, sentence, and imprisonment, are unconstitutional and in violation of the Petitioner's substantive and procedural Due Process of Law, Equal Protection of Law, and other Rights under the United States Constitution, and/or Federal Law, as determined by the United States Supreme Court, where no Ohio statute identified either "Spice" or "Bath Salts" as a "controlled substance analog" by either name or definition, until after the date of the "offenses" listed in his indictment; and where the statutes under which the Petitioner was charged failed to provide the Petitioner, or any other average citizen affected by the statutes, of the particular form of notice that "is in itself reasonably certain to inform those affected."

**Ground Three**: The Petitioner is in State custody in violation of the Constitution or laws or treaties of the United States as determined by the United States Supreme Court, whereas the State Trial Court lacked Subject Matter Jurisdiction over the "charges" set out in the Petitioner's Indictment alleging that he possessed and trafficked "Bath Salts", "Spice", and/or "APVP", during a period of time when no Ohio statute identified either "Bath Salts", "Spice", or "A-PVP", as a "controlled substance analog" by either name or definition, or otherwise named or identified either substance as being included within the statutory list of substances whose possession and/or sale were prohibited by law, until after the date of the "offenses" listed in his indictment, causing the Indictment, Judgment of Conviction, and Sentence, to be void ab initio.

**Ground Four**: The Petitioner is actually innocent of Engaging in A Pattern of Corrupt Activity, and he is in State custody in violation of the Constitution or laws or treaties of the United States as determined by the United States Supreme Court, whereas Engaging in A Pattern of Corrupt Activity requires a valid conviction of at least two or more underlying predicate offenses, and his conviction, sentence, and imprisonment, are unconstitutional and violate substantive and procedural Due Process of Law, Equal Protection of Law, and other Rights under the United States Constitution, and/or Federal Law, as determined by the United States Supreme Court, where he is charged, convicted, and imprisoned for possessing and trafficking in "Spice" or "Bath Salts", and/ or "A-PVP", during a period of time when no Ohio statute identified either "Spice" or "Bath Salts", or "A-PVP", as a "controlled substance analog" by either name or definition, until after the date of the "offenses" listed in his indictment; where the lack of any such definition and name of substances preclude possession and sale of these substances from being charged as criminal offenses as a result of the statutes under which the Petitioner was charged having failed to provide the Petitioner, or any other average citizen affected by the statutes, of the particular form of notice that "is in itself reasonably certain to inform those affected."

**Ground Five**: The Petitioner is actually innocent of Engaging in Pattern of Corrupt Activity (or RICO), and he is in State custody in violation of the Constitution or laws or treaties of the United States as determined by the United States Supreme Court, whereas his conviction, sentence, and imprisonment, are unconstitutional and violate substantive and procedural Due Process of Law, Equal Protection of Law, and other Rights under the United States Constitution, and/or Federal Law, where the lack of two or more valid charges, and convictions, or underlying predicate offenses deprived the State Trial Court of statutory jurisdiction over Engaging in pattern of corrupt activity as a secondary offense, causing the Petitioner's Indictment, conviction, and sentence, for Engaging in pattern of corrupt activity to be void *ab initio*.

**Ground Six**: The adjudication of the Petitioner's claims in the State's highest Court resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

>**Ground Seven**: The adjudication of the Petitioner's claims in the State's highest Court resulted in a decision that was contrary to and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. With respect to the claims that were adjudicated on the merits in State's highest court proceedings, which resulted in the State Court of Appeals' decision being overturned, and the Petitioner's conviction and sentence being reinstated, the adjudication of the claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. As a result of the State having appealed to the highest Court in Ohio, which overturned the State Court of Appeals' decision that overturned the Petitioner's conviction, the petitioner has no right under the law of the State to raise the questions presented by any procedure available in the ordinary course of Ohio law.

(Petition, ECF No. 1, PageID 20-28).

# Analysis

**Statute of Limitations**

Respondent asserts Mobarak's claims are barred by the one-year statute of limitations enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").  As codified at 28 U.S.C. § 2244(d), the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

>(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Respondent asserts Mobarak's conviction became final forty-five days after the state appellate court affirmed the trial court's judgment on remand, or on November 13, 2017 (State Court Record, ECF No. 4, Exhibit 27). The State concedes the statute of limitations was tolled by the pendency of Mobarak's post-conviction petition. As noted above, the trial court dismissed that petition and the Tenth District affirmed that dismissal on January 28, 2020 (State Court Record, ECF No. 4, Ex. 42). Mobarak's time to appeal to the Supreme Court of Ohio expired forty-five days later on March 13, 2020. Mobarak did not file his Petition in this Court until January 5, 2024. Thus Respondent argues the Petition is untimely and should be dismissed.

Petitioner offers no objection to Respondent's calculation of when his conviction became final on direct review and the statute began to run. Instead he argues because the state trial court lacked subject matter jurisdiction,

8

> the judgment is *void ab initio*. . . . The law of the land that a void judgment is void "even prior to reversal" shows that there is no need for "equitable tolling", as a void judgment is always open to attack."
> . . . Further, the lack of subject jurisdiction of any court is an issue and claim that cannot be waived by anything the Petitioner, courts, or other parties may do or not do, and cannot be barred by any claim of procedural bar, lack of diligence, etc.

(Traverse, ECF No. 11, PageID 2338-39).

As authority for this proposition, he relies on several Supreme Court decisions: *Peirsoll v. Elliott*, 31 U.S. 95 (1832)(cited by Petitioner as *Elliott v. Peirsol,* 1 Pet. 328, 344); *Old Wayne Mutual Life Association v. McDonough,* 204 U.S. 8 (1907); *Vallely v. Northern Fire & Marine Ins. Co.,* 254 U.S. 348, 353-354 (1920); and *United States v. Cotton*, 535 U.S. 625, 630 (2002).

*Peirsoll* does not address a void judgment, but a void deed.

In *Old Wayne*, judgment was obtained in Pennsylvania on a life insurance policy where service of process had been made on the Pennsylvania insurance commissioner. Plaintiff then sued in Indiana to collect on that judgment. The Supreme Court held the Pennsylvania court lacked personal jurisdiction over the insurance company and the judgment sued on was therefore void. The case did not involve habeas corpus, subject matter jurisdiction, or any statute of limitations.

In *Vallely,* the Supreme Court held that the then-extant bankruptcy act did not authorize bankruptcy proceedings against an insurance company and the judgment declaring Northern Fire bankrupt was void. The case did not involve habeas corpus or any statute of limitations. The Court did hold that the bankruptcy court lacked subject matter jurisdiction, but did so in a proceeding on a certified question from the Eighth Circuit Court of Appeals.

None of these three cases offers much instruction on the question central to the Warden's statute of limitations defense, to wit, can the authority of federal district court to inquire in habeas into the validity of the judgment of conviction be limited by a statute of limitations?

9

*Cotton* is more instructive because it discusses the history of the writ of habeas corpus, noting that the Supreme Court had stretched the concept of jurisdiction to hold that a defective indictment did not confer jurisdiction in *Ex Parte Bain*, 121 U.S. 1 (1887). The Court found that conception of jurisdiction was

> a product of an era in which this [Supreme] Court's authority to review criminal convictions was greatly circumscribed. At the time it was decided, a defendant could not obtain direct review of his criminal conviction in the Supreme Court. See generally *United States v. Sanges,* 144 U.S. 310, 319–322, 12 S.Ct. 609, 36 L.Ed. 445 (1892); L. Orfield, Criminal Appeals in America 244–246 (1939). The Court's authority to issue a writ of habeas corpus was limited to cases in which the convicting court had no jurisdiction to render the judgment which it gave." *Bain, supra,* at 3, 7 S.Ct. 781; see also *Preiser v. Rodriguez,* 411 U.S. 475, 485, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In 1887, therefore, this Court could examine constitutional errors in a criminal trial only on a writ of habeas corpus, and only then if it deemed the error "jurisdictional." The Court's desire to correct obvious constitutional violations led to a "somewhat expansive notion of 'jurisdiction,'" *Custis v. United States,* 511 U.S. 485, 494, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), which was "more a fiction than anything else," *Wainwright v. Sykes,* 433 U.S. 72, 79, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

545 U.S. at 630. *Cotton* expressly overruled *Bain* and held that errors in an indictment do not deprive a court of jurisdiction. Although *Bain* would have supported Mobarak's claim, *Cotton* does not.

The federal courts gained habeas corpus jurisdiction over state convictions only with Reconstruction; early examples of the Supreme Court's granting relief when it found the state court lacked jurisdiction are *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1873), and *Ex parte Siebold*, 100 U.S. 371 (1879). But Congress placed no statute of limitations on habeas corpus cases until it enacted the AEDPA in 1996 and in enacting that statute, it made no exception for cases claiming the state court lacked jurisdiction. Petitioner has cited no case in which the Supreme Court, or indeed any lower federal court, has read into § 2244(d) an exception for cases claiming lack of

10

jurisdiction in the state court of conviction.  Lack of jurisdiction in the convicting court is a cognizable claim in habeas under the Due Process Clause of the Fourteenth Amendment.  But a federal habeas court can only decide that claim in a case that is timely brought.  This case was not and should therefore be dismissed with prejudice as barred by the statute of limitations.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 22, 2024.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge